UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| JOHN WELLS, | ) |
| Plaintiff, | ) Civil Action No. 10-99-ART |
| v. | ) |
| BOTTLING GROUP, LLC, et al., | ) **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A plaintiff is the master of his complaint. *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007). He decides what claims to bring and where to bring them. But his discretion is not without limit. Under the appropriate circumstances, a defendant may challenge a plaintiff's state-law claim as one actually arising under federal law and defeat the plaintiff's choice of forum by removing the case to federal court. Here, the defendant Bottling Group ("Pepsi") has done just that. Pepsi removed this action to federal court on August 16, 2010. R. 1. The plaintiff John Wells then filed a motion to remand on September 14, 2010. R. 11. Because § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts one of Wells's claims and the Court assumes supplemental jurisdiction over his other claims, Wells's motion to remand is denied.

## BACKGROUND

On January 9, 2009, a fistfight erupted between Wells and his coworker Michael Charles. R. 16 at 2. Wells maintains Charles physically attacked him, causing mental and physical

injuries. R. 1, Attach. 1 at 4. Wells also says he repeatedly reported unsafe conditions to Pepsi management in the time leading up to the fight. *Id*. Whatever sparked the altercation that day and who threw the first punch do not matter for present purposes. What does matter is Pepsi's decision to terminate both Wells and Charles soon thereafter. R. 16 at 2.

Wells filed a claim against Pepsi and Michael Charles in Pike Circuit Court on July 1, 2010. R. 1, Attach. 1. In his complaint, he first alleges that he "was wrongfully discharged and terminated from his employment by [Pepsi]." *Id*. at 4. He next alleges that Pepsi's "failure to provide [him] with a safe and secure workplace was in direct violation to their own Code of Conduct and Human Rights Workplace Policy." *Id*. He then states that his termination was also "in direct violation of [Pepsi's] Code of Conduct." *Id*. And finally, he makes a claim for punitive damages as a result of Pepsi's "wanton, willful and negligent acts." *Id*.

Pepsi removed this action to federal court on the ground that Wells's complaint states a claim under federal law, giving this Court original jurisdiction. Wells disagrees with Pepsi's position and now moves for a remand to state court. Try as he might to say otherwise, his claims include a federal question, making a remand to state court improper.

## DISCUSSION

**1. Preemption**

Wells insists that his complaint belongs in state court because all of his claims arise out of state common or statutory law. R. 11, Attach. 1 at 2, 7. No basis for removal exists, he argues, because he asserts no federal cause of action. He is correct that state law forms the basis for *some* of his claims, including the claims he articulates in his motion to remand alleging wrongful

discharge in violation of public policy and failure to provide a safe workplace based on Kentucky law. He specifically cites KY. REV. STAT. ANN. § 338.031(1)(a), the "general duty" provision of the Kentucky Occupational Safety and Health Act, as the state law underlying these claims. *Id*. at 6. A closer examination of Wells's complaint, however, reveals that at least one of his claims is preempted by federal law because it requires an interpretation of the collective bargaining agreement between Pepsi and the Union. As a result, a federal issue appears on the face of Wells's complaint, and artful pleading will not convert what is in truth a federal claim into one based on state law. *See Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981).

But how does this square with the rule that a "plaintiff [is] the master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law"? *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The answer to this question starts with a look at the process of removal. A party may remove a case filed in state court that arises "under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b). To determine whether a case raises a federal question, courts follow the "well-pleaded complaint rule." This rule provides that "federal jurisdiction exists only when a federal question is presented on the face of [a] plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392.

Like most rules of law, there are exceptions. For example, the "complete pre-emption" doctrine works to convert "an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id*. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). This doctrine has been applied to § 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185. The preemptive force of this statute is

3

so "powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (internal citations omitted). Specifically, § 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). In practice, § 301 grants federal courts jurisdiction to enforce collective bargaining agreements and allows "federal courts to fashion federal law where federal rights are concerned." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457 (1957). This also means that even when a plaintiff asserts a state-law claim, the claim will be preempted when it is "substantially dependent" upon an analysis of a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988).

Wells argues at the outset that Pepsi has failed to make the threshold showing that he is subject to the collective bargaining agreement. R. 11, Attach. 1 at 4. But the only evidence introduced suggests otherwise. Pepsi, in its notice of removal, states that the collective bargaining agreement governs the terms and conditions for Pepsi's unionized workforce. R. 1 at 2. As an hourly employee, Wells was a member of the bargaining unit and therefore subject to the collective bargaining agreement. *Id.*; R. 18 at 1. Pepsi also submitted the affidavit of Elizabeth Galloway, Senior Human Resources Manager, confirming Wells's status as an hourly employee subject to the collective bargaining agreement. R. 18. She stated that Pepsi withheld

4

Union dues from Wells's paycheck and remitted those dues to the Union. *Id*. at 1. At no time did Wells contest this withholding or disavow Union membership. *Id*. Moreover, Galloway participated in a meeting with the Union on January 18, 2009, to discuss Wells's discharge. *Id*. at 2. The Union purported to represent Wells's interests as his exclusive agent at that meeting. Again, he did not dispute the Union's presence on his behalf. *Id*. While the Union ultimately chose not to pursue his grievance, the Union never claimed it did *not* represent Wells. *Id*. The briefs do not make clear why the Union decided against pursuing his case. These facts, nevertheless, suggest that Wells belonged to the Union and that the collective bargaining agreement controlled the terms and conditions of his employment.

So what does Wells offer in response to this evidence? First, he parses Galloway's words from her affidavit, alleging she never *actually* said Wells was doing work "subject to the collective bargaining agreement." R. 17 at 4. Second, Wells makes the point that the collective bargaining agreement exempts certain employees, such as foremen and supervisors. R. 11, Attach. 1 at 9. But he does not say he falls into one of these categories. Third, he attempts to rely on an introductory sentence in the notice of removal stating that Pepsi will prove (but has not yet done so) that Wells was terminated under the Code of Conduct and the collective bargaining agreement. R. 11, Attach. 1 at 8; R. 1 at 2. He maintains that Pepsi's use of the words "will prove" demonstrates that Pepsi has not yet made its case for removal. R. 11, Attach. 1 at 8. But Pepsi need not analyze the merits of Wells's complaint in its notice of removal. Instead, it must establish the basis for removal, which it appropriately did. In the end, Wells does nothing to persuade the Court that Pepsi's affidavits and briefs should not be believed.

5

While the party seeking removal bears the burden of establishing it is entitled to do so, *see Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989), the opposing party cannot sit obstinately with his arms crossed in the face of affirmative evidence to the contrary. The burden does not fall on Wells to say that he is or is not an employee for purposes of the collective bargaining agreement. He could, however, say which statements by Pepsi are false. By contrast, Pepsi does not mince words: Wells qualifies as an employee subject to the collective bargaining agreement. R. 1 at 2. The preponderance of the evidence in the record—all of the evidence, in fact—establishes that Wells is subject to the collective bargaining agreement. Therefore, the Court considers him subject to that agreement for purposes of this action.

Because Wells qualifies as an employee subject to the collective bargaining, the question arises: Are his claims "independent" of that agreement and based on state law as he says*? See Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004). In *Decoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir.1994), the Sixth Circuit set forth the following test for evaluating whether a state-law claim is "sufficiently independent" to overcome § 301 preemption: First, would resolving the state-law claim require an interpretation of the collective bargaining agreement? And second, are the rights claimed by the plaintiff created by the collective bargaining agreement or are they instead created by state law? Wells correctly notes, and *Decoe* confirms, that the existence of a collective bargaining agreement does not by itself prevent an individual from bringing state-law claims based on an independent agreement or obligation. *Caterpillar*, 482 U.S. at 396. But that does not mean a plaintiff can disguise a claim as one arising under state law

6

when, in reality, it involves a federal question. *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989) (citing *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988) ("'[A]rtful pleading' will not suffice to avoid preemption under section 301.")). And at least one of his claims is not independent of the collective bargaining agreement because it requires an interpretation of that document.

## 2. Wells's Claims for Wrongful Discharge

The first task in evaluating Wells's claims is to discern from the pleadings what he actually alleges. He appears to make two independent claims for wrongful discharge—one based on state law (presumably his public policy claim) and another based on the Pepsi Code of Conduct. As part of his motion to remand, Wells's states that he "seeks damages under state law for wrongful termination and personal injuries from [Pepsi and Charles] on account of Pepsi's alleged wrongful termination of [him]." R. 11, Attach. 1 at 1. In the next sentence, Wells says he also "seeks damages from Pepsi for its alleged failure to provide him with a safe and secure place to work . . . and for its wrongful termination of [him] in violation of its Code of Conduct, Human Rights Workplace Policy and Values and Philosophy." *Id*. at 1-2. His original complaint filed in state court also suggests two claims for wrongful discharge. R. 1, Attach. 1 at 4-5. Thus, the Court considers each claim separately.

Wells first alleges in his original complaint filed in Pike Circuit Court that Pepsi wrongfully discharged him in violation of the Pepsi Code of Conduct. R. 1, Attach. 1 at 5. He does not, however, claim that Pepsi discharged him based on the collective bargaining agreement. In fact, he says all of his claims are independent of the collective bargaining agreement. R. 11,

Attach. 1 at 2. An analysis of this particular claim shows otherwise.

As an initial matter, Wells has not shown that the Code of Conduct even contains a provision that would preclude his termination. Neither party filed the relevant portions of this document in the record or referenced those provisions in their briefs, so the Court can only assume this document sets forth the basic safety policies to be followed by Pepsi management and its employees. Even so, Wells is not an at-will employee, and the collective bargaining agreement controls the terms and conditions of his employment—not a company policy such as the Code of Conduct.

What exactly does the collective bargaining agreement mandate? It states that an employee who has completed his probationary period cannot be discharged "without cause."[1] R. 1, Attach. 2 at 12. It then proceeds to outline a series of violations constituting "cause." *Id*. This agreement also includes a clause stating that "[i]t is the intent of the parties hereto that the provisions of this Agreement, which supersedes all prior agreements and understandings; oral or written, expressed or implied, between such parties, shall govern their entire relationship and **shall be the sole source of any and all right or claims** which may be asserted in arbitration hereunder, or otherwise." *Id*. at 26 (Article 25) (emphasis added). With these words the agreement establishes and limits the grounds on which Pepsi can terminate Wells. He fails to point the Court toward anything in the Code of Conduct that would grant him protection from

---

[1] Wells claims the record fails to show he completed the probationary period, presumably meaning he still could qualify as an at-will employee and not be subject to the collective bargaining agreement. R. 11, Attach. 1 at 13 n.8. But he fails to develop this argument. Also, the affirmative evidence introduced by Pepsi sufficiently overcomes any doubts the Court may have on this point. *See* R. 18.

8

wrongful discharge or that would supersede any provision of the collective bargaining agreement. Therefore, if Wells wishes to bring a wrongful termination claim, he must do so under the collective bargaining agreement. *See Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154, 1156 (10th Cir. 1991) (stating that collective bargaining agreement governs employee discharges and holding claim preempted because any determination of defendant's liability under state law would turn on interpretation of collective bargaining agreement); *Viestenz v. Fleming Cos.*, 681 F.2d 699, 701 (10th Cir. 1982) (because collective bargaining agreement only thing preventing employer from terminating employee at will, claim of wrongful discharge had to be brought on basis of that agreement); *Swift v. Ford Motor Co.*, 637 F. Supp. 125, 126 (E.D. Mich. 1986) ("More importantly, federal labor law preempts any state claim of wrongful discharge where a collective bargaining agreement is involved."); *Broughton v. Gen. Motors Corp.*, No. 5:93-cv-31, 1993 WL 546592, *2 (W.D. Mich. June 28, 1993) ("[W]here a plaintiff-employee is covered by a collective bargaining agreement that contains discharge language, such as a "just cause" provision, post *Allis-Chalmers* case law establishes that state claims of retaliatory discharge, wrongful discharge, and the like, are preempted by § 301.").

Moreover, any question as to the origin of this claim is resolved by reference to the *Decoe* test followed by the Sixth Circuit. That test considers whether the right claimed by the plaintiff was created by the collective bargaining agreement or instead created by state law. *Decoe*, 32 F.3d at 216. It also considers whether resolving the "state-law claim" would require an interpretation of the collective bargaining agreement. *Id*. Whether one considers the right at issue to be the right to a safe workplace as created by the Code of Conduct or the right not to be

9

terminated wrongfully as set forth in the collective bargaining agreement, those rights in no way implicate state law. Neither the Kentucky legislature nor the Kentucky courts created the collective bargaining agreement or the Code of Conduct. Instead, Pepsi, with the cooperation of the Union, created these rights. As a result, § 301 preempts his claim, and remanding this case to state court would be improper.

As for Wells's second wrongful discharge claim—wrongful discharge in violation of public policy—this claim does in fact find its roots in state law. R. 11, Attach. 1 at 10 n.6; *see Grzyb v. Evans*, 700 S.W.2d 399 (Ky. 1985). Whether or not such a claim is even available to an employee governed by a collective bargaining agreement presents a question for another day. *See Salyers v. A.K. Steel Corp.*, No. 07-16-HRW, 2008 WL 3849918, *3 (E.D. Ky. Aug. 14, 2008) (stating that Kentucky law does not afford a cause of action when an employee's rights and obligations as a union employee are determined by a collective bargaining agreement).

### 3. Supplemental Jurisdiction

Because the Court has original jurisdiction over Wells's cause of action for wrongful discharge based on the Code of Conduct under the "complete preemption" doctrine, the Court will also exercise supplemental jurisdiction over the rest of his claims because "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). That is, all of Wells's claims "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). That common nucleus is the fistfight between Wells and Charles and Wells's subsequent termination.

Wells argues that because he makes a public policy claim that could conceivably involve

novel questions of state law this Court should follow its holding in *Francis v. Marshall*, No. 07-240, 2010 WL 4053572 (E.D. Ky. Oct. 14, 2010), and remand the action to state court. But that case involved a situation where all federal claims had been dismissed and only a state-law claim remained. That is not the case here.

In the interest of judicial economy, convenience, and fairness to litigants, Wells's federal claim and related state-law claims should be tried together in federal court. *Gibbs,* 383 U.S. at 726.

## CONCLUSION

Accordingly, it is **ORDERED** that the plaintiff Wells's motion to remand, R. 11, is **DENIED**. The Court previously denied Pepsi's motion to dismiss or compel arbitration without prejudice in order to first consider Wells's motion to remand. Pepsi may now re-file its motion should it so choose.

This the 22nd day of November, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge