UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JOHN WELLS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-99-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| BOTTLING GROUP, LLC, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs do not get to pick their facts. Here, the facts show that the plaintiff John Wells's employment was subject to a collective bargaining agreement. And so his claim for wrongful termination is preempted and must be dismissed as time-barred because it runs afoul of the applicable statute of limitations. His negligence claim against the company, however, stands apart from the collective bargaining agreement and survives the company's motion to dismiss. Thus, it is remanded to state court, as is his claim against his co-worker.

## DISCUSSION

The Court previously set forth the relevant facts in its order denying Wells's motion to remand. *See Wells v. Bottling Group, LLC*, No. 10-99-ART, 2010 WL 4822740, at *1 (E.D. Ky. Nov. 22, 2010). Briefly, the defendant Bottling Group ("Pepsi") terminated Wells after he and his coworker engaged in a fist fight at work. R. 1, Attach. 1 at 4. Wells then filed a complaint against Pepsi in Pike Circuit Court, alleging that Pepsi wrongfully discharged him and failed to provide him with a safe workplace. Pepsi removed this action to federal court on August 16, 2010, on the theory that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.

§ 185, completely preempted Wells's wrongful-discharge claim. In its view, his claim was inextricably intertwined with the collective bargaining agreement ("CBA") governing his employment. R. 1. Wells moved to remand the action to state court, but this Court denied his motion. R. 19. Wells subsequently filed a motion to vacate the denial of his motion to remand, R. 23, and Pepsi filed a motion to dismiss, R. 21. Both motions are now ripe for consideration.

**Wells's Motion to Vacate**

Wells mentions both Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure in his motion to vacate but fails to specify under which section he proceeds. R. 23, Attach. 1 at 3. But he has not shown he is entitled to relief under either rule. Rule 59(e) permits a court to alter or amend its judgment based on the following: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). Yet Wells has pointed to no clear errors of law or introduced any new evidence to justify relief under Rule 59. Rule 60(b) permits relief from a final judgment for "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). Such relief under Rule 60 "is an 'extraordinary remedy that is granted only in exceptional circumstances.'" *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502-03 (6th Cir. 2000) (quoting *Dickerson v. Bd. of Educ. of Ford Heights.*, 32 F.3d 1114, 1116 (7th Cir. 1994)). No "exceptional circumstances" are present.

Wells has done nothing to undermine this Court's conclusion that he was an employee subject to the CBA. With each challenge by Wells that Pepsi failed to show he was subject to

2

the CBA, Pepsi has come forward with additional affirmative evidence to rebut his arguments. R. 16, Attach. 1; R. 18; R. 26, Attach. 1-4. And asking Wells to respond to Pepsi's affirmative evidence in no way placed on him an improper burden.

Nor has Pepsi proceeded by way of negative implication as Wells contends. R. 23, Attach. 1 at 8. Pepsi previously submitted the affidavit of Elizabeth Galloway, its Human Resources Manager, who stated: "The Union was representing Mr. Wells' interests in the meeting as his exclusive agent for purposes of collective bargaining." R. 18 at 2. Only after making this affirmative statement does she note that Wells did not contest the withholding of dues or union membership.

Because Wells's employment is subject to the CBA, that agreement controls the terms and conditions of his employment. It establishes his right not to be fired "without cause." R. 1, Attach. 2 at 12 (Article 9). This is the sole document giving him this right—not the Pepsi Code of Conduct. The Code of Conduct makes no mention of an employee's right to just-cause termination. *See* R. 34, Attach. 2. Further, the CBA plainly states: "[I]t is the intent of the parties hereto that the provisions of this Agreement, which supersedes all prior agreements and understandings; oral or written, expressed or implied, between such parties, shall govern their entire relationship and shall be the sole source of any and all rights or claims which may be asserted in arbitration hereunder, or otherwise." R. 16, Attach. 2 at 26 (Article 25).

In the end, Wells's wrongful-termination claim cannot be considered apart from the CBA. *See Decoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (evaluating whether the right claimed was created by the collective bargaining agreement or state law for purposes of § 301

3

preemption). And he has presented nothing to show that the Court's previous order denying his motion to remand should be vacated. Thus, his motion—whether under Rule 59(e) or 60(b)—is denied.

**Pepsi's Motion to Dismiss**

Pepsi now seeks dismissal of Wells's claims under Rule 12(b)(6). Construing Wells's complaint in his favor and accepting his allegations as true, *Bowman v. United States*, 564 F.3d 765, 769 (6th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)), Wells's federal claim—his wrongful discharge claim[1]—still fails on statute-of-limitations grounds. That leaves a negligence claim alleging Pepsi failed to provide him with a safe workplace and his claim for personal injuries against his coworker, Defendant Michael Charles.[2] Both of these claims survive Pepsi's motion to dismiss.

As an initial matter, Pepsi has offered materials outside the pleadings concerning Wells's union membership. *See* R. 26, Exhibits 1-4. While considering materials outside the pleadings in a motion to dismiss usually requires that the motion instead be treated as one for summary

---

[1] Wells alleges his wrongful discharge claim is "more akin to an action for retaliatory discharge for which preemption is not found." R. 27 at 14. But nowhere in his complaint does he plead retaliatory discharge. Further, he has not requested leave to amend his complaint to add a retaliatory discharge claim or dismiss his wrongful discharge claim.

[2] Pepsi removed this action to federal court without the consent of Mr. Charles. It is not clear that Mr. Charles has ever been served with process. Wells, however, did not object to removal on this basis. *See Hicks v. Emery Worldwide, Inc.*, 254 F. Supp. 2d 968, 972 n.4 (S.D. Ohio 2003) (citing *Klein v. Manor Healthcare Corp.*, No. 92-4328, 92-4347, 1994 WL 91786, at *3 n. 8 (6th Cir. Mar. 22, 1994)) (stating that an exception to the general rule that all defendants must join or consent to removal exists where the non-joining defendant has not received service of process at the time the removal petition is filed).

4

judgment, Fed. R. Civ. P. 12(d), here those materials are only offered in response to Wells's motion to vacate. The question of Wells's union membership has been settled, and these materials do not concern the motion to dismiss. The Court, therefore, need not treat Pepsi's motion to dismiss as one for summary judgment under Rule 56. And Wells need not be given additional time to respond. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (noting that while a district court may convert a motion *sua sponte*, it must first "afford the party against whom *sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond." (quoting *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984))).

**Wrongful Termination**

The Court previously held that Wells's wrongful-termination claim was completely preempted by § 301 of the LMRA because it could not be resolved without interpreting the CBA. R. 19 at 10. The CBA, in turn, contains arbitration procedures to be followed in the event of a disagreement between the company and a member of the union. While Wells failed to exhaust these procedures, his claim does not fail on exhaustion grounds. Rather, a wrongfully discharged employee may still bring a claim in the face of an exhaustion defense. *Vaca v. Sipes*, 386 U.S. 171, 186 (1967). That employee, however, must "prove that the union as bargaining agent breached its duty of fair representation in its handling of [his] grievance." *Id*. This is referred to as a hybrid § 301 claim. The hybrid § 301 claim actually involves two claims: (1) that the employer breached the CBA and (2) that the union breached its duty of fair representation. *Garrison v. Cassens Transp. Co.,* 334 F.3d 528, 538 (6th Cir. 2003) (citing *Black v. Ryder/P.I.E.*

5

*Nationwide, Inc.*, 15 F.3d 573, 583 (6th Cir. 1994)). A plaintiff must establish both violations if he is to succeed against either party, as the claims are "inextricably interdependent." *Id*. at 538. That is not to say Wells must sue both Pepsi and the union—he need not. Instead, he must *prove* both claims regardless of which party he sues. *Id*. at 538 n.8.

Wells concedes that he failed to allege the union breached its duty of fair representation. R. 27 at 18-19. But, says Wells, let me amend and I will fix the problem. *Id*. at 19 ("Assuming arguendo only that Mr. Wells's Motion to Vacate is overruled, the plaintiff will move under [Rule 15(a)] to amend his Complaint to add allegations that the Union breached its duty of fair representation[.]"). But an amendment would be futile because the statute of limitations bars Wells's "amended" claim. Futility, of course, is a valid reason to reject a request to amend. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) ("Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision." (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989))); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (affirming district court decision not to allow amendment when doing so would be futile).

Because Wells proposes amending his complaint to add allegations against both Pepsi and the union, the six-month statute of limitations under the National Labor Relations Act applies. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 154-55 (1983) (citing 29 U.S.C. § 160(b)). Wells's cause of action accrued on November 23, 2009—five days after the union refused to handle his grievance and the last day on which he could file a grievance under the CBA. *See* R.

26, Attach. 1 at 3 (affirming that the union refused to handle Wells's grievance on November 18, 2009). To be within the six-month window, Wells should have filed his complaint by May 23, 2010. But he waited until July 1, 2010. Thus, because he filed his complaint more than six months after his cause of action accrued, his claim must be dismissed.

Wells's belief that this Court should instead apply a longer, state statute of limitations is incorrect. While there is no federal limitations period directly on point, *see DelCostello*, 462 U.S. at 158, courts have applied the six-month statute of limitations found in § 10(b) of the NLRA, 29 U.S.C. § 160(b), to hybrid actions. *Hechler v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 834 F.2d 942, 944 (11th Cir. 1987) (citing *DelCostello*, 462 U.S. at 169-70). The trouble for Wells is that if he amends his complaint and alleges that the union breached its duty of fair representation, that claim would immediately fall victim to the six-month limitations period. And each case Wells cites to support his argument for applying a state statute of limitations involves a situation different from his own. In *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1216 (6th Cir. 1987), employees sued their employer for benefits under their pension plan, and the court used a state statute of limitations for what was essentially a breach of contract case. The court noted, importantly for this action, that "federal courts may still resort to the most analogous state statute of limitations where, as here, the action does *not* implicate the breach of the union's duty of fair representation." *Id*. (emphasis added) (citing *Cent. States Se. & Sw. Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1107 (6th Cir. 1986) (en banc)). Contrary to *Apponi*, Wells's claim implicates this duty, meaning it would not be proper to apply a state statute of limitations. Further, the other cases on which Wells relies do not involve a breach of

7

the duty of fair representation. *See Hechler*, 834 F.2d at 943; *Sams v. United Food & Commercial Workers Int'l Union*, 866 F.2d 1380, 1382 (11th Cir. 1989); *Montgomery v. Stone Port Wentworth, Inc.*, No. CV488-035, 1988 U.S. Dist. LEXIS 6004, at *7 (S.D. Ga. May 6, 1988).

Since Wells's amendment to bring a hybrid claim would be futile, his request to amend his complaint is denied. Accordingly, his wrongful discharge claim is dismissed.

### Wells's Safe Workplace Claim

Wells also alleges what both parties agree is a common-law negligence claim not subject to preemption. R. 38. He argues that Pepsi violated the common law rule that an employer owes his employee a reasonably safe place to work. R. 27 at 4; *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859-60 (1987) ("Under the common law . . . it is the employer . . . that owes employees a duty to exercise reasonable care in providing a safe workplace.") (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on The Law of Torts 569 (5th ed. 1984)). It did so, he claims, in violation of its own company policy—the Pepsi Code of Conduct (a separate document from the CBA). And the failure of a company to enforce its own rules for employee safety is evidence of negligence under Kentucky law. *Ray v. Hardee's Food Sys., Inc.*, 785 S.W.2d 519, 520 (Ky. Ct. App. 1990) ("That violation of safety rules may properly be considered in a negligence action by an employee against his employer was long ago established."). True, the CBA also includes a safety provision; but the duty on which Wells relies to prove his claim comes from the common law. The CBA and the Code of Conduct are simply evidence which Wells may or may not use to prove his case. Because resolving his claim

8

will not require interpreting the terms of the CBA, it is not preempted by § 301 of the LMRA. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

To begin, preemption depends on "whether the [state-law cause of action] confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state-law] claim is inextricably intertwined with consideration of the terms of the labor contract." *Valinski v. Detroit Edison*, 197 F. App'x 403, 410 (6th Cir. 2006) (quoting *Allis-Chalmers*, 471 U.S. at 213). Merely consulting a CBA is not enough for preemption purposes. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988) (noting that consulting a CBA for a rate of pay might be helpful for a damage determination in a state-law suit but it would not require preemption). The Sixth Circuit uses the *DeCoe* test for resolving such preemption questions. *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). The first prong of the *DeCoe* test asks whether proof of the state-law claim will require interpreting the terms of a collective bargaining agreement. *Id*. (citing *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989)). The second prong seeks to determine whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. *Id*. A state-law claim failing either prong is preempted by § 301.

Under Kentucky law, "a negligence action requires: (1) a recognized duty; (2) a breach of that duty; and (3) consequent injury." *James v. Wilson*, 95 S.W.3d 875, 889 (Ky. Ct. App. 2002). Wells confirms that his safe-workplace claim is, in fact, a negligence action. R. 38. Further, the duty for this negligence action comes from the common law. *See Big Sandy & C.R.*

9

*Co. v. Measell's Adm'r*, 42 S.W.2d 747, 754 (Ky. 1931). Wells only looks to the Pepsi Code of the Conduct, a document separate from the CBA that details the Workplace Violence Policy, as evidence of his negligence claim. That policy states: "[Pepsi's] commitment to employee safety is [] reflected in the Company's 'zero tolerance' Workplace Violence Policy. The Company's Workplace Violence Policy expressly prohibits (1) acts of violence, (2) threatening communications or behavior, and (3) the use or possession of weapons by any person on PBG property . . . ." R. 34, Attach. 2 at 21. The policy goes on to provide that employees should immediately report any threats or potential for violence to their supervisor or Human Resources Manager. *Id*. Likewise, employees should "report any other working condition that is unsafe or threatens the quality of a PBG product." *Id*. While Wells may use this policy as proof Pepsi breached its duty, his claim will not rise or fall on whether Pepsi violated its Code of Conduct. Indeed, Pepsi's failure to prohibit a threatening communication between employees would not constitute a per se breach of its duty to provide a safe workplace. In other words, a violation of the Code of Conduct is not *ipso facto* a breach of its duty of care. That is a different question.

Nor does the CBA subsume his negligence claim. While Article Six of the CBA includes a provision labeled "Safety and Health," it only addresses more generalized safety concerns. It reads: "The Company will make reasonable provisions for the safety and health of the employees during work hours. The Company agrees to make a copy of the OSHA Manual available to all employees." R. 34, Attach. 1 at 11. Article Six also deals with physical examinations when the company believes an employee is disqualified from work, drug and alcohol testing of employees, and payment for washing trucks outside of normal working hours.

10

*Id*. at 11-12. Article Six of the CBA makes no mention of workplace violence or harassment.

As both parties now acknowledge, R. 38, the Code of Conduct is evidence supporting Wells's common-law negligence claim. Wells could conceivably prove his claim without reference to the Code of Conduct *or* the CBA. *See McCormick v. AT&T Techs., Inc.*, 934 F.2d 531, 535 (4th Cir. 1991) ("[T]he question in preemption analysis is not whether the source of a cause of action is state law, but whether resolution of the cause of action requires interpretation of a collective bargaining agreement."). Thus, the Court need not consider whether the CBA incorporates the Code of Conduct by reference. Wells's claim is not preempted and survives Pepsi's motion to dismiss.

**Remand**

After dismissing his wrongful-discharge claim, Wells is left with a negligence claim against Pepsi for failing to provide a safe workplace and a claim for personal injuries against his coworker. The Court may exercise supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367(a) only if the "interests of judicial economy and the avoidance of multiplicity of litigation" outweigh the need to avoid "needlessly deciding state law issues." *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004). The presumption tilts strongly in favor of remand. In general, when "the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *Id*. at 210 (internal quotation marks omitted). Because it is early in the litigation, the federal claim is gone, and the remaining claims turn on issues of Kentucky law, the Court will remand these claims to the Pike Circuit Court.

Finally, Pepsi requests that the Court compel arbitration of Wells's claims should they

11

not be dismissed. R. 22 at 2, 12. But Pepsi has not shown that Wells's common-law negligence claim is subject to arbitration. *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003) ("A court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003))). Because the claim is not based on the CBA, the CBA's arbitration provision does not apply. For this reason, Pepsi's motion to compel arbitration is denied.

## CONCLUSION

Wells's federal cause of action is now gone. All that remains are his state-law claims, and the Kentucky courts are better positioned to address these issues. Accordingly, it is **ORDERED** that:

(1) Wells's motion to vacate, R. 23, is **DENIED**.

(2) Pepsi's motion to dismiss, R. 21, is **GRANTED IN PART** and **DENIED IN PART**. Pepsi's motion to dismiss Wells's § 301 wrongful discharge claim is **GRANTED**. Pepsi's motion to dismiss Wells's common-law negligence claim is **DENIED**.

(3) Pepsi's motion to compel arbitration, R. 21, is **DENIED**.

(4) Wells's common-law negligence claim and claim against his co-worker are **REMANDED** to the Pike Circuit Court.

(5) This matter is **STRICKEN** from the Court's active docket.

This the 8th day of June, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge